# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: MD HELICOPTERS, INC., *et al.*, | : Chapter 11 |
| | : Case No. 22-10263-KBO |
| Debtors. | : (Jointly Administered) |
| | : |
| THE STATE OF THE NETHERLANDS, | : |
| | : Civ. No. 22-702-RGA |
| | : Civ. No. 22-828-RGA |
| Appellant, | : |
| v. | : |
| | : |
| MD HELICOPTERS, INC., *et al.*, | : |
| | : |
| Appellees. | : |

## MEMORANDUM OPINION

Dennis O'Donnell, James E. Berger, Charlene C. Sun, DLA Piper LLP (US), New York, NY; R. Craig Martin, DLA Piper LLP (US), Wilmington, DE, attorneys for appellant The State of the Netherlands.

Suzanne Uhland, Adam S. Ravin, Brett M. Neve, Tianjiao (TJ) Li, Alexandra M. Zablocki, Latham & Watkins LLP, New York, NY; David B. Stratton, David M. Fournier, Evelyn J. Meltzer, Kenneth A. Listwak, Troutman Pepper Hamilton Sanders LLP, Wilmington, DE, attorneys for appellees MD Helicopters, Inc., *et al.*

July 1, 2022

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

These appeals arise in the chapter 11 cases of MD Helicopters, Inc. (together with certain affiliates, "Debtors") and in connection the Debtors' sale of assets free and clear of all liens, claims, and encumbrances, including a judicial lien ("Netherlands Lien") held by appellant, the State of the Netherlands ("the Netherlands") which, the Netherlands asserts, attached to certain leasehold interests and related improvements located on premises leased by the Debtors at their Mesa, Arizona manufacturing facility, located in Maricopa County, Arizona ("Mesa Leases and Improvements"). The Netherlands has appealed two orders: (1) the Bankruptcy Court's May 26, 2022 bench ruling (D.I. 21-1 ("5/26/22 Tr.") at 59:5-69:14 ("Bench Ruling")) and the accompanying June 1, 2022 Order (B.D.I. 303; D.I. 4-2) ("Phase One Order"),[1] which together held that, although the Netherlands Lien is a valid and binding lien on any "real property" owned by the Debtors in Maricopa County, the Netherlands Lien was not secured by any collateral because the Debtors owned no such real property; and (2) the subsequent order approving the sale of the Debtors' assets free and clear of the Netherlands Lien (B.D.I. 377) ("Sale Order").[2]

Pending before the Court is the Netherlands' *Emergency Motion for Order Certifying State Law Question to Supreme Court of Arizona* (D.I. 4, 5, 18) ("Emergency Certification Motion"), which seeks to certify the issue of "whether the Debtors' lease of land and buildings ... in Mesa, Arizona [] are subject to the Netherlands' valid judicial lien under an Arizona statute, Ariz. Rev. Stat. 33-961." (D.I. 4 at 2). Debtors oppose the Emergency Certification Motion. (D.I. 8). Also pending before the Court is the Netherlands' *Emergency Motion for Stay Pending Appeal* (D.I. 12,

---

[1] The appeal of the Phase One Order is pending at Civ. No. 22-702-RGA.

[2] The appeal of the Sale Order is pending at Civ. No. 22-828-RGA.

13, 23, 25) ("Emergency Stay Motion"),[3] which seeks a stay of **both** the Phase One Order and the Sale Order, so that the Netherlands "may prosecute and obtain a ruling on the [Certification Motion]," and (2) "with the benefit of a ruling on this issue of Arizona law from the Arizona Supreme Court, brief, argue and obtain a ruling from this Court on the merits of the Appeals"—assuming, that is, that the Arizona Supreme Court accepts the question for review. (D.I. 12 at 3). Debtors oppose this relief as well. (D.I. 21, 24). The Emergency Certification Motion and the Emergency Stay Motion are fully briefed. For the reasons set forth herein, the Court will deny both Emergency Motions.

## I. BACKGROUND

### A. The Netherlands Lien

Prior to the Debtors' chapter 11 filing, the Hague District Court in the Netherlands rendered two separate judgments in favor of the National Police Services Agency of the Netherlands (the "KLPD") against debtor MDHI for damages, fees, and interest based on MDHI's guaranty of a distributor's obligation under a 2001 procurement contract to deliver aircraft to the KLPD, which the distributor breached. The KLPD thereafter assigned the judgments to the Netherlands. The Netherlands domesticated the judgment in the Superior Court of Maricopa County, Arizona, which issued an Arizona judgment in favor of the Netherlands for $15,074,750.[4] The Netherlands recorded that judgment in the Office of the Maricopa County Recorder—which maintains land and judgment records for Mesa, Arizona. Debtors appealed the judgment, but the

---

[3] Appellant has filed the Emergency Stay Motion in both the Phase One Order appeal and the Sale Order appeal. For ease of reference, this Memorandum Opinion cites to the docket of the Phase One Order appeal, Civ. No. 22-702-RGA.

[4] *State of the Netherlands v. MD Helicopters, Inc.*, No. CV2015-095127 (AZ Maricopa Super. Ct. Nov. 13, 2018).

Arizona Court of Appeals, and ultimately, the Supreme Court of Arizona, affirmed, ruling that the judgment was enforceable.[5] On August 3, 2021, the Netherlands recorded a Final Judgment with Mandate, reflecting the outcome of the appeal and increasing the amount due under the judgment.[6]

### B. The Chapter 11 Cases and the Lien Dispute Process

On March 30, 2022, Debtors filed voluntary petitions seeking relief under chapter 11 of the Bankruptcy Code. On April 26, 2022, the Bankruptcy Court entered an order approving procedures with respect to a competitive sale and marketing process for substantially all of the Debtors' assets (B.D.I. 206) ("Bid Procedures Order"), and an order authorizing Debtors to obtain post-petition financing and use collateral (including cash collateral) (B.D.I. 205) ("Final DIP Order"). The Bid Procedures Order contemplates a sale of Debtors' assets free and clear of all liens, claims, and encumbrances to the bidder submitting the highest and best offer.

The Netherlands asserted in the chapter 11 cases that, by virtue of the Netherlands Lien, it was the senior, secured creditor as to the Debtors' rights in the Mesa Leases and Improvements. (B.D.I. 221 ¶ 1). Debtors and their pre- and post-petition secured lenders (which have liens on substantially all of the Debtors' assets) disagreed regarding the extent, priority, and value of the Netherlands Lien, as well as the Netherlands' entitlement to any additional adequate protection. (Final DIP Order ¶ 37(c)). The Bankruptcy Court approved the parties' agreement to an expedited, two-phase process to determine the lien dispute prior to the asset sale. In "Phase One" of this process, the parties agreed that the Bankruptcy Court would determine: (i) "whether the Netherlands Lien is [] valid and binding;" (ii) "whether and to what extent the Netherlands Lien

---

[5] *State of the Netherlands v. MD Helicopters, Inc.*, 478 P.3d 230 (Ariz. 2020).

[6] The Netherlands asserts that the full amount of the judgment is now in excess of $17.5 million. (D.I. 4 at 8 n.7).

4

properly attached to any real property of the Debtors, including any leasehold interests and related improvements owned by the Debtors in Maricopa County;" and (iii) "whether the Netherlands Lien is senior to [all other encumbrances on the relevant collateral]." (*Id.* ¶ 37). If the Bankruptcy Court concluded that the Netherlands had a valid and binding senior lien on the Debtors' assets, the lien determination process would proceed to "Phase Two," for a determination of (i) the value of the collateral securing the Netherlands Lien, and (ii) the Netherlands' entitlement to any additional adequate protection. (*Id.* ¶ 37(d)).

### C. Bench Ruling and Phase One Order

On May 26, 2022, the Bankruptcy Court issued its Bench Ruling, holding that although the Netherlands Lien is a valid and binding lien on any "real property" owned by the Debtors in Maricopa County, the Netherlands Lien was not secured by any collateral because the Debtors owned no such "real property." (Bench Ruling 68:20-69:2). Reviewing relevant Arizona authority, the Bankruptcy Court first found that "[l]eases are not real property and, therefore, cannot be a part of a real property." (*Id.* 63:18-19). With respect to the Improvements, the Bankruptcy Court found, "an absence of clear and express language in the [Mesa Leases] that invents [sic] an intent to treat the improvements a[s] property of the debtors and, therefore, they are owned by the city [of Mesa under the default rule in Arizona law]." (*Id.* 68:17-20). Alternatively, the Bankruptcy Court held that, even if the parties to the Mesa Leases had intended to grant ownership of the Improvements to the lessee, they would be "owned by [Debtor MDHI] as its personal property." (*Id.* 63:23-64:3). In light of those findings, the Bankruptcy Court had no need to address the third Phase One question—i.e., whether the Netherlands' lien over any collateral had priority over all other claims on that collateral—or to proceed to Phase Two. (*Id.* 68:17-69:8).

On May 27, 2022, the Netherlands appealed. (D.I. 1). On June 1, 2022, the Bankruptcy

5

Court entered the Phase One Order memorializing the terms of its Bench Ruling. On June 2, 2022, the Netherlands filed its Emergency Certification Motion (D.I. 4), along with a motion in the Bankruptcy Court for a stay of the Phase One Order pending appeal. (B.D.I. 305). On June 6, 2022, the Bankruptcy Court denied the Netherlands' request for expedited consideration of the stay motion and set a hearing on the stay motion for June 17, 2022 – the same day as the hearing to approve the sale. (B.D.I. 316). The same day, this Court set a briefing schedule on the Netherlands' Emergency Certification Motion.

At the June 17, 2022 hearing, the Bankruptcy Court issued an oral ruling denying the Netherlands' request for a stay of the Phase One Order pending appeal based on the Netherlands' failure to establish a likelihood of success on the merits. (*See* D.I. 12-1 ("6/17/22 Tr.") 79:12-80:17). At the same hearing, the Bankruptcy Court entered the Sale Order. (*Id.* 95:22-97:3). In so doing, the Bankruptcy Court overruled a limited objection filed by the Netherlands challenging, among other things, the scope of the § 363(m) "good faith" finding granted by the Sale Order. (B.D.I. 343 ¶¶ 3-5, 13-19).

Based on the Bankruptcy Court's denial of the Netherlands' request for a stay of the Phase One Order, denial of the Netherlands' request for expedited treatment of same, and the Bankruptcy Court's reaffirmation of the propriety of its Phase One Order conclusions, the Netherlands concluded that it would be impracticable to seek a stay of the Sale Order from the Bankruptcy Court. (D.I. 12 ¶ 13). On June 21, 2022, the Netherlands filed the Emergency Stay Motion in this Court, seeking a stay of the Sale Order in the first instance as well as a stay of the Phase One Order.

## II.   JURISDICTION

The Court has jurisdiction over appeals from final judgments, orders, and decrees of the bankruptcy court. *See* 28 U.S.C. § 158(a)(1). The Phase One Order is a final order. *In re Todd*,

6

2013 WL 1182092, at *1 (D. Nev. Mar. 18, 2013).   The Sale Order approving the sale of the Debtors' assets is also a final order.  *In re Culp*, 550 B.R. 683, 691-92 (D. Del. 2015).

## III.   STANDARD OF REVIEW

This Court "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998).  On appeal, the issue of whether the Bankruptcy Court correctly construed the relevant Arizona statutes would be reviewed *de novo*.  *See Selective Insurance Company of Am. v. Novitsky*, 796 F. App'x 100, 101 n.1 (3d Cir. 2020) ("We review the District Court's interpretation of state statutes de novo."); *Kapral v. U.S.*, 166 F.3d 565, 567 (3d Cir. 1999) (same).

## IV.   ANALYSIS

In light of the implications that any decision on the Emergency Stay Motion will necessarily have on the relief available in the Emergency Certification Motion, as well as the timeframe of the pending asset sale, I am compelled to consider and issue a decision on both on an expedited basis.

### A.   Emergency Certification Motion

Section 12-1861 of the Arizona Revised Statutes provides that the Arizona Supreme Court may answer questions of Arizona law, certified to it by federal courts, "which may be determinative of the cause" and "as to which it appears to the certifying court there is no controlling precedent" in the decisions of the Arizona Supreme Court and intermediate state appellate courts.  *See* A.R.S. § 12-1861.  The Supreme Court has observed that federal courts have the discretion to certify a question to a state court and that certification "in the long run save[s] time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  Indeed, Arizona's certification procedure allows "a federal

7

court faced with novel state-law questions to put the question directly to the State's highest court, reducing the delay, cutting costs, and increasing the assurance of gaining an authoritative response." *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997) (noting that Arizona's statute permits the State's highest court to consider questions certified to it by federal district courts).

The Third Circuit has noted that federal courts should be mindful of the Supreme Court's stated principles regarding certification. *See U.S. v. Defreitas*, 29 F.4th 135, 141 (3d Cir. 2022). The *Defreitas* court set forth a non-exhaustive list of factors relevant to whether certification is appropriate in a particular case, noting that none of these factors should be considered dispositive. First, the relevant question's eventual resolution should be unclear and control an issue in the case. Second, courts should consider the "importance" of the question. Third, courts should consider judicial economy. *Id.* at 141-43. Even where there is a "lack of binding precedent or unambiguous statutory command," "certification would be inappropriate" as long as state law "is sufficiently clear to allow [a federal court] to predict its course." *In re Engage, Inc.*, 544 F.3d 50, 53 (1st Cir. 2008). I conclude that the *Defreitas* factors are not satisfied here.

### 1. Resolution of the Question Is Clear Under Arizona Law

The Netherlands seeks to certify the question of "whether a judgment lien under Arizona Revised Statute 33-961 attaches to leasehold interests or improvements built on leased land."[7] (D.I. 4 at ¶ 4). That statute provides, in relevant part:

---

[7] The question for certification is not entirely clear from the briefing. The Netherlands' specific request for relief is "an order certifying a question to the Arizona Supreme Court to determine whether the Netherlands Lien attaches to the Debtors' rights in the Mesa Leases and Improvements under Arizona Revised Statute 33-961." (D.I. 4 at ¶ 26; *see id.* ¶ 7 ("Does the Netherlands' Lien attach to the Debtors' rights in the Mesa Leases and Improvements, which are used by the Debtors to operate their aircraft manufacturing business?"). Framed in this way, however, there is no pure question of law for the Arizona Supreme Court to answer. "The role of

8

> A certified copy of the judgment of any court in this state may be filed and recorded in the office of the county recorder in each county where the judgment creditor desires the judgment to become a lien on the real property of the judgment debtor. On recording in substantial compliance with both the requirements of this section and the requirements of § 33-967 regarding an information statement, ***the judgment becomes a lien on the real property of the judgment debtor, including any part of the real property of the judgment debtor as otherwise provided by law.***

A.R.S. § 33-961(A) (emphasis added).

### a.  The Mesa Leases

The Netherlands argues that Arizona law is unclear, because, "No Arizona court has ever addressed whether 'chattels real,' like a leasehold interest or improvements thereupon, are subject to a judicial lien under section 33-961A of the Arizona Revised Statutes." (D.I. 4 ¶¶ 21, 29). I disagree that Arizona law is unclear.

The Arizona statute provides that a properly-recorded judgment lien attaches only to "***real property of the judgment debtor*** in the county in which the judgment is recorded. . . ." A.R.S. § 33-964(A) (emphasis added). Arizona statutes define "real property" as "coextensive with lands, tenements and hereditaments," A.R.S. § 1-215(34), and "personal property" as including "money, goods, ***chattels***, things in action and evidences of debt," A.R.S. § 1-215(30) (emphasis added). Arizona statutes provide that a tenant's interest in leaseholds are "chattels real." A.R.S. § 33-202(B). Because the term "chattels real" is not defined by statute, Arizona courts look to common law to fill that gap. *See* A.R.S. § 1-201; *see also Valley Nat'l Bank of Ariz. v. Avco Dev. Co.*, 480 P.2d 671, 673 (Ariz. App. 1971). Under well settled Arizona law, "chattels real"—such as a tenant's interest in a leasehold—is a form of chattel. *See, e.g., Harbel Oil Co. v. Steele*, 318 P.2d

---

a state's appellate court is not to act as a finder of fact in the certification procedure." *Remington Arms Co. v. Liberty Mut. Insur. Co.*, 796 F. Supp. 117, 119 (D. Del. 1992). Certification of such a question, requiring the Arizona Supreme Court to make a fact- and case-specific determination regarding the property at issue (i.e., the Mesa Leases and Improvements), would be inappropriate.

9

359, 361 (Ariz. 1975) ("One of the estates in land less than a freehold estate is an estate for years [i.e., a leasehold]. Estates for years are chattels real. . . . ***At common law a lease for years, being a chattel real, is personal property***.") (emphasis added; internal citations omitted); *Abraham v. Fioramonte*, 107 N.E. 2d 321, 325 (Ohio 1952) ("The courts have quite generally held that a lease for a term of years short of a freehold estate . . . is a special form of chattel commonly referred to as a chattel real."); *see also* Black's Law Dictionary (11th ed. 2019) (defining "chattel" to include both "chattel personal" and "chattel real"). Because § 1-215(30) defines "personal property" to include "chattel," a tenant's interest in a leasehold is therefore "personal property." A.R.S. § 1-215(30).

According to the Netherlands, "The issue of whether the Netherlands [judgment] attached to the Debtors' rights in the Mesa Leases and Improvements is governed by a recently amended Arizona statute, Ariz. Rev. Stat. 33-961, and there is no controlling precedent on that question." (D.I. 4 ¶ 36). The Netherlands focuses on the 2015 amendment to the Arizona statute, which changed the following phrase: "On recording, … the judgment becomes a lien on the real property of the judgment debtor, including any part of the real property of the judgment debtor ***as otherwise provided by law***." A.R.S. § 33-961(A) (emphasis added). The Netherlands asserts that, by virtue of the 2015 amendment's addition of "as otherwise provided by law," the scope of real property to which a judgment lien can attach now includes the Debtors' leasehold interests (*see* D.I. 4 at ¶¶ 38-40; 5/26/22 Tr. at 19:16-20:6; 29:15-30:7); that the Bankruptcy Court did not discuss the 2015 amendment in its Bench Ruling; that the cases upon which it relied do not address or predated the 2015 amendment; and that this is but one aspect of the Bankruptcy Court's decision that "demonstrates the need for meaningful input from the Arizona courts." (D.I. 4 at ¶¶ 34, 38 & n.23).

10

I disagree that the 2015 amendment expanded the statute to permit a judgment to become a lien on any property that is not "real property" or a part of "real property." The Netherlands does not identify any "law" that treats the leasehold interest as "part" of a debtor's "real property." Based on its plain meaning, the statute provides that, on recording, the judgment becomes a lien on the real property of the judgment debtor, including any part of the real property ***that the law says is part of real property***. (*See* 5/26/22 Tr. at 61:1-6 ("the judgment lien of the Netherlands could not attach to the leases under Section 33-961(a) which only permits judgment liens to extend to debtor's real property ***or a part of that real property***.") (emphasis added). Notwithstanding the 2015 amendment, Arizona law remains sufficiently clear to guide a federal court to predict that the Debtors' interests in the Mesa Leases are not "real property." (*See* Bench Ruling at 63:15-22).

### b. The Mesa Improvements

With respect to the Mesa Improvements, the Bankruptcy Court determined that the Netherlands Lien cannot attach to them because the improvements are either real property owned by the City of Mesa during the term of the lease or, alternatively, owned by MD Helicopters as its personal property. (5/26/22 Tr. at 63:23-69:2). On this issue, Arizona law appears equally clear.

The general rule is that "permanent structure[s] placed by a tenant upon leased premises and attached to the realty are deemed to be real property and belong to the lessor." *Maricopa County v. Novasic*, 473 P.2d 476, 478 (Ariz. Ct. App. 1970) (emphasis added). Arizona courts look to the lease terms to determine whether the parties intended to depart from this general rule. *See id.* at 479; *Cutter Aviation, Inc. v. Ariz. Dept. of Revenue*, 958 P.2d 1, 7-8 (Ariz. Ct. App. 1997); *Marcos v. Tex. Co.*, 251 P.2d 647, 649 (Ariz. 1952) (stating parties may treat property as "realty or personalty" by agreement). Where—as is the case here—a lessee's interest is related solely to occupancy and the lease terms expressly limit the ways in which the lessee can use the property and improvements, the lessee has no true ownership interest in the improvements.

*Novasic*, 473 P.2d at 479; *Cutter*, 958 P.2d at 7; B.D.I. 245 ¶¶ 57-63 (citing lease provisions); Bench Ruling at 67:3-12. Because the Debtors do not "enjoy traditional rights of control and disposition" of the Improvements under the terms of the Leases, Arizona law is clear that they cannot be considered the owners of the Improvements. *Cutter*, 958 P.2d at 6-7; *see also* Bench Ruling at 66-67. Moreover, any dispute regarding whether the Leases at issue depart from the general rule is just the sort of fact-intensive analysis that is not amenable to certification. *See Remington Arms Co.*, 796 F. Supp. at 119.

As the Bankruptcy Court also held, the Netherlands' argument fails for an alternative reason: even if the Mesa Leases evidenced some intent to grant the Debtors an ownership interest in the Improvements, such rights would be considered the Debtors' "personal property." (Bench Ruling at 63:23-64:3). The Netherlands argues that the Bankruptcy Court improperly focused on the terms of the Mesa Lease and did not give adequate consideration to the fact that the City executed one or more quitclaim deeds conveying the Mesa Improvements to the Debtors. (D.I. 4 at 14 n.20 (citing Bench Ruling at 63:23-68:16)). But the Netherlands cites no cases where an improvement held by a tenant was deemed "real property."

### 2. Resolution of the Question Does Not Control the Outcome

The question also is not "determinative in the case." *Remington Arms Co.*, 796 F. Supp. at 120. The Netherlands argues that the question it seeks to certify is determinative because "the Supreme Court's ruling on the Arizona legal issue will determine the Netherlands' rights under the Bankruptcy Code, namely what rights and role the Netherlands has with respect to a sale of the Mesa Leases and Improvements and what treatment they are entitled to receive under several statutory provisions in the Bankruptcy Code." (D.I. 4 ¶ 5). As the Debtors correctly point out, an Arizona Supreme Court decision on the certified question would not resolve the Netherlands' entitlements under the Bankruptcy Code. Even if the issue of whether the Netherlands Lien

12

attaches to the Mesa Leases and Improvements is decided in the Netherlands' favor, the Netherlands concedes that there are other questions that must also be answered in its favor before it may be awarded its requested relief in the form of a secured claim – including the priority that should be afforded to the Netherlands Lien with respect to the relevant collateral, the value of any attached collateral, and whether the Netherlands was entitled to additional adequate protection. (*See* D.I. 4 at ¶ 16).

### 3. The Question Lacks Special Importance in Arizona Jurisprudence or Policy

The Court should consider "a state's interest in the interpretation of its own law as well as [the certifying court's] interest in supporting cooperative judicial federalism." *Defreitas*, 29 F.4th at 142. As the Third Circuit has noted, questions that support certification under this prong involve "state constitutional law," "competing state public policy interests," or issues that "will commonly recur." *Id.* at 142-43. This dispute does not involve a question of Arizona "state constitutional law," and neither of the other considerations support certification here.

As to public policy interests, the Netherlands asserts that "questions involving the effect and reach of liens are quintessential state law issues" worthy of certification. (D.I. 4 at ¶¶ 30-31). The cited cases do not support this. The Netherlands relies heavily on *In re Engage, Inc.* (*id.* ¶¶ 32-34), but in that case, the First Circuit only certified the question after finding that the relevant statutes were ambiguous and "existing [state] case law d[id] not provide sufficient guidance." 544 F.3d at 56. Nothing in that case suggested that lien issues are more certification-worthy than any other state-law issue. Indeed, the court in that case cautioned that "certification would be inappropriate where state law is sufficiently clear to allow us to predict its course," even if there was a "lack of binding precedent or unambiguous statutory command." *Id.* at 54-55. Other certification cases cited by the Netherlands did not find that lien rights represented a uniquely

13

important state interest. *See, e.g., In re Pereira*, 791 F.3d 180, 185 (1st Cir. 2015) (cited at D.I. 4 ¶ 31) (granting certification where there was a lack of "reasonably clear guidance," and the questions played a "determinative role in this case"); *In re Music City RV, LLC*, 2009 WL 77248, at *2 (Bankr. M.D. Tenn. Jan. 5, 2009) (cited at D.I. 4 ¶ 31) (granting certification where there was "no relevant [state] law" on the certified question).

Finally, the Court is not persuaded that the issue will "commonly recur." The Netherlands argues that "the question is important to all future judgment creditors in Arizona, as the question is not one that is specific to bankruptcy and is likely to recur in Arizona." (D.I. 4 at ¶ 29). I agree with the Debtors that this argument is belied by the Netherlands' position that "[n]o Arizona court has been called upon to determine" whether judgment liens apply to leasehold interests and improvements in the seven years since the statute was amended in 2015. (*Id.* ¶ 34).

### 4. Certification Would Not Support Judicial Economy

The final factor looks to "judicial economy" to ensure "that certification remains an efficient method to resolve disputes." *Defreitas*, 29 F.4th at 142. The Third Circuit instructs courts to look at both "the cost effectiveness of certification" and "the actions of the parties." *Id.* As to the latter, courts also look "the timeliness of a request for certification" to make sure the movant is not simply seeking "a do-over" following "an adverse decision." *Id.* The Third Circuit has noted, "[a] party should not be allowed a second chance at victory through certification by [an] appeals court after an adverse [lower] court ruling." *Id.* (quoting *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) (internal quotations omitted)); *see also State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015) ("[C]ertification is disfavored when it is sought only after the [lower] court has entered an adverse judgment.").

The Netherlands argues that "judicial economy will be well served as the procedure in Arizona will result in briefing being completed within 20 days after the acceptance of the certified

question." (D.I. 4 at ¶ 29). But the Netherlands offers no reason that it did not or could not have sought certification months ago from the Bankruptcy Court, rather than agree to a timeline for conducting the lien determination process that ran parallel to the deadlines for the sale process. That briefing may be expedited under the rules, and that the busy Arizona Supreme Court may endeavor to issue a ruling on the certified question in 80 days (*see* D.I. 18-1), does little to offset the inevitable harm to the Debtors and their estates while the asset sale process is halted for an indeterminate period of time.

I agree with the Debtors that the Netherlands could have asked the Bankruptcy Court to certify the same question to the Arizona Supreme Court months ago. *See, e.g., In re McLauchlan*, 502 P.3d 975 (Ariz. 2022) (accepting certification from bankruptcy court); *In re Vasquez*, 266 P.3d 1053, 1054 (Ariz. 2011) (same). This factor weighs against granting certification here. *See Ninivaggi v. Univ. of Del.*, 2021 WL 5822191, at *1 (D. Del. Dec. 3, 2021) (decision to not seek certification, where movant "knew that the case [purportedly] presented novel and important issues" warranted denying certification).

Based on my consideration of the *Defreitas* factors, I conclude that certification of this question to the Arizona Supreme Court is not appropriate.

### B. Emergency Stay Motion

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). The Netherlands bears the burden of showing that a stay of the Phase One Order and Sale Order is warranted based on the following criteria: (1) whether the movant has made "a strong showing" that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *Republic of Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir.

1991). The most critical factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm – the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) [it] will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*In re Revel AC*, 802 F.3d at 571 (emphasis in text) (internal quotations and citations omitted).

### 1. Likelihood of Success on the Merits

As to the first factor—whether the stay applicant has made a strong showing that it is likely to succeed on the merits—a sufficient degree of success for a strong showing exists if there is "a reasonable chance, or probability, of winning." *In re Revel AC, Inc.*, 802 F.3d at 568-69 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)). It "is not enough that the chance of success on the merits be better than negligible," but the likelihood of winning on appeal need not be "more likely than not." *Id.* at 569 (internal quotations omitted). The question the Third Circuit asked in *Revel* was, "Did the applicant make a sufficient showing that . . . it can win on the merits" by a showing "significantly better than negligible but not necessarily greater than 50%." *In re Revel AC, Inc.*, 802 F.3d at 571.

I have determined that resolution of the question raised by the Netherlands is clear under Arizona law. Indeed, I conclude that the relevant Arizona statutes and case law are clear that a leasehold interest is personal property and a judicial lien may attach to real

property only. For the same reasons that I will not certify this question to the Arizona Supreme Court, I find that the Netherlands has not made a significantly better than negligible showing that it is likely to succeed on the merits of its appeal of the Phase One Order. Accordingly, I see little likelihood of success on the appeal of the Sale Order.

### 2. Irreparable Harm Absent a Stay

As to the second factor of the stay analysis, the applicant for a stay must "demonstrate that irreparable injury is likely in the absence" of the stay. *Winters v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). Irreparable harm is an injury that "cannot be redressed by a legal or equitable remedy following a trial." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 595 (3d Cir. 2002).

The Netherlands points to several injuries: (1) the loss of its credit bidding rights, (2) the potential that the Netherlands will not receive sufficient proceeds, if it wins its appeal, to cover the value of its collateral; and (3) the potential loss of appellate rights based on § 363(m) of the Bankruptcy Code.

First, a stay of the Phase One Order and Sale Order will not remedy the loss of the Netherlands' credit bidding rights, as the auction was cancelled and the winning bidder has been selected. (B.D.I. 319).

Second, as to the potential shortfall in available proceeds, the Netherlands fails to show this harm is likely or imminent, as it does not identify the assets the estates may (or may not) have following the sale. Moreover, such an assertion fails in view of the line of cases that hold that a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement unless the potential economic loss is so great as to threaten the existence of the movant's business. *See Revel AC*, 802 F.3d at 572. No such assertion

17

(or any analogous assertion, considering that the Netherlands is not a business) has been made. I note, however, that the potential economic harm does not stand alone.

Third, I consider the Netherlands' appellate rights. section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). The Sale Order found that the buyer was a good faith purchaser under § 363(m) of the Bankruptcy Code. (Sale Order ¶¶ 34, 39). Thus, in absence of a stay, the closing of this asset sale approved under § 363(m) may statutorily moot any appeal from the Sale Order. *See In re Pursuit Cap. Mgmt., LLC*, 874 F.3d 124, 135 (3d Cir. 2017); *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 499 (3d Cir. 1998).

The Phase One Order is not an order under § 363 and is not eligible for § 363(m) protections. But, as the Netherlands pointed out in its limited objection to the sale, the Debtors' request for a § 363(m) finding in the Sale Order was made against the backdrop of the already pending appeal of the Phase One Order. The Netherlands therefore requested that the Sale Order "contain an express statement that the section 363(m) relief … does not apply to the [Bench] Ruling or the Phase One Order." (B.D.I. 343 at ¶¶ 13-19). This relief was not granted. The Netherlands now argues that because there is a good faith finding in the Sale Order, absent the requested stay pending appeal, the Debtors may attempt to argue that the Sale Order's § 363(m) finding also applies to the Phase One Order and that both appeals are moot.

I am not in a position to determine whether the Debtors may prevail on such an argument. But the potential loss of the Netherlands' rights to appeal an important issue with

respect to its lien is significant. The Debtors have not argued that the Netherlands' rights would be unaffected if the sale is permitted to close. As the Third Circuit has stated, "[C]ertainly, the fact that the decision on the stay may be dispositive of the appeal . . . is a factor that an appellate court must consider" in determining whether irreparable harm will result from the denial of a stay. *Westinghouse*, 949 F.2d at 658. Here, there is a substantial risk of mootness, in addition to potential economic harm. Thus, the Netherlands has carried its burden of establishing irreparable harm.[8] However, in the absence of a significantly better than negligible showing that the Netherlands is likely to succeed on the merits of its appeal of the Phase One Order, I find that a stay pending appeal of either order is unwarranted.

Having evaluated the two most important factors in considering whether a stay should be granted, and having determined that the Netherlands has failed to carry its burden on one of them, I am satisfied no further analysis is required. *See Revel AC*, 802 F.3d at 571.

---

[8] On June 28, 2022, Debtors filed their *Motion for Leave to File a Sur-Reply in Further Opposition to Emergency Motions for Stay Pending Appeal* (D.I. 24) ("Sur-Reply Motion"), and the Netherlands filed an objection (D.I. 25). The Sur-Reply Motion attached a proposed sur-reply in which the Debtors sought to address the Netherlands' assertion, contained in its reply brief, that the Netherlands "did provide proof of the value of its collateral by reference to its credit bid for the full amount of its claim." (D.I. 23 at 6). Debtors assert this issue was not raised in the Netherlands' initial stay motion, that the argument was therefore waived, but to the event this Court was inclined to considered the Netherlands' argument, the Court should also consider the Debtors' sur-reply, which refuted the Netherlands' reliance on a Third Circuit decision. (D.I. 24). The Netherlands' reply on this point, however, was offered to refute the Debtors' contention, in its opposition to the Emergency Stay Motion, that the Netherlands failed to "provide any evidence of the value of its alleged collateral" and therefore failed to establish irreparable harm. (D.I. 21 at 3). As such, the Netherlands' reply was not improper. In any event, the Court will not consider any argument regarding the value of the purported collateral. The Bankruptcy Court had no cause to reach this issue in its Bench Rulings, and I have already concluded that the Netherlands carried its burden of establishing irreparable harm. Accordingly, I will deny the Sur-Reply Motion.

## V.  CONCLUSION

The Netherlands has failed to present a question of state law appropriate for certification to the Arizona Supreme Court, and it has failed to establish that a stay pending appeal of the Phase One Order or Sale Order is warranted. A separate order will be entered.